## . NELSON v. KEITH-O'BRIEN CO. et al.

No. 1809. Decided June 26, 1907 (91 Pac. 30).

1. CORPORATIONS—RIGHT TO ASSESS STOCK. The power of a corporation to levy an assessment on full-paid capital stock must be derived from the statute, the articles of incorporation, or some other express promise to pay.

2. SAME—ASSESSMENT OF PAID-UP STOCK. The original articles of incorporation of a company granted the directors power for the purposes of paying expenses, conducting the business, or paying the debts of the corporation to levy assessments upon the outstanding capital stock as provided by law, and declared the capital stock for that purpose assessable. It was also provided that the articles might be amended in any respect at any stockholders' meeting called for that purpose after due notice; a majority of the outstanding stock represented at the meeting voting for the amendment. Revised Statutes 1898, section 331, allows the assessment of full-paid capital stock to the extent and in the manner expressly provided in the articles of incorporation. *Held,* that a majority of the outstanding stock had power to amend the articles, so as to authorize an assessment on the full-paid capital stock when the corporate indebtedness exceeded ten per cent of the outstanding stock, notwithstanding Revised Statutes 1898, section 338, providing that articles of incorporation might be amended by two-thirds of the outstanding capital stock, but declaring that the liability of the holders of full-paid capital stock for assessments, etc., should not be changed without the consent of "all" the stockholders.

3. SAME—TREASURY STOCK. The articles of incorporation of a company provided that five hundred shares of its capital stock should remain in the treasury, and should be disposed of at such time and for such price as the directors should determine. The financial condition of the company was such that, if the stock were sold, no substantial sum would be realized for it. *Held,* that the directors were not required to sell the treasury stock before levying an assessment on the outstanding stock to pay the corporate debts.[1]

APPEAL from District Court, Third District; M. L. Ritchie, Judge.

---

[1] Gary v. Mining Co., 9 Utah 464, 35 Pac. 494.

Action by H. A. Nelson against the Keith-O'Brien Company and others. From a judgment for defendants, plaintiff appeals.

AFFIRMED.

*M. P. Braffett* and *King, Burton & King* for appellant.

*Dickson, Ellis, Ellis & Schoulder* and *Howat & Macmillan* for respondents.

### APPELLANT'S POINTS.

There being, then, no statutory authority, or no express provision in the articles of incorporation, the corporation had no power to levy an assessment. (*Enterprise Ditch Co. v. Moffitt,* 58 Neb. 642; *Omaha Library Assn. v. Connell,* 55 Neb. 396; 2 Beach on Private Corp., sec. 590; Thompson on Corp., secs. 1037, 1038; *Rosenback v. Bank,* 53 Barb. 495; *State v. Fire Assn.,* 23 N. J. L. 195.)

The courts are therefore unanimous in holding that a corporation has no power as incident to its organization to levy an assessment upon stock which has been fully paid up. (*Duluth Club v. Macdonald,* 74 Minn. 254; *Atlantic, etc., Co. v. Mason,* 5 R. I. 463; *Library Assn. v. Connell,* 55 Neb. 396; *Toner v. Fulkerson,* 125 Ind. 224.)

### RESPONDENT'S POINTS.

In all cases where at the time of subscribing stock in a corporation, there are existing laws by which the charter of such corporation may be changed, such subscription must be presumed to have been made with a view to such laws and to changes which may possibly be made conformably to them; and in such case, a majority of the stockholders may adopt such changes against the will of a minority. (*Bish v. Johnson,* 21 Ind. 299; *Mowry v. Railroad,* No. 9891 Fed. Cas.; *Mower v. Staples* [Minn.], 20 N. W. 226.)

When such power is reserved at the time of the organization

of a corporation, any changes in the law made by the Legislature are binding upon the stockholders, even if the liability of the stockholders is thereby changed. (*In re Empire City Bank*, 18 N. Y. 199; *In re Oliver Lee & Company*, 21 N. Y. 19; *Sleeper v. Goodwin*, 67 Wis. 577, 31 N. W. 335; *Tomlinson v. Jessup*, 15 Wall. 454; *McGowan v. McDonald* [Cal.], 43 Pac. 418.)

If the construction should be given to the statute that is claimed for it by the appellant, yet the stockholders themselves in the articles of incorporation waived its provisions and agreed that amendments might be made to the articles of incorporation as provided in article 19. Such a provision in the statute, where the question of public policy or the interests of creditors are not involved, is solely for the protection of the stockholders, and the stockholders may waive the benefit of the statute. (Sedgwick on Con. & Stat. Laws, 111; 3 Clark & Marshall on Corporations, 2614; *Shutte v. Thompson*, 15 Wall. 151, 159; *Phyfe v. Eimer*, 45 N. Y. 102; *Bucher v. Marq. & Pac. R. C. Co.*, 45 Mich. 107; *Robinson v. Bidwell*, 22 Cal. 379, 388; *French v. Teschmaker*, 24 Cal. 518, 559, 560; *People v. Robinson*, 46 Cal. 95; *Meredith v. S. C. M. A. etc.*, 60 Cal. 617, 619; *Bush v. Robinson*, 95 Ky. 492.)

STRAUP, J.

This action was brought by plaintiff against the Keith-O'Brien Company, a corporation engaged in general mercantile business and organized under the laws of the state of Utah, and against its directors and its secretary, for an alleged conversion of certain shares of the capital stock of the corporation owned by the plaintiff and his assignors. Judgment was in favor of the defendants, and plaintiff appeals.

The full-paid capital stock of the plaintiff and his assignors was sold by the defendants for nonpayment of assessments levied against it. The only question presented is whether the board of directors had authority to assess the stock. Section 331, Rev. St. 1898, provides:

"The property of the corporation and the unpaid stock shall be liable for the debts of the corporation; but the individual property of any holder of full-paid capital stock of any corporation organized since March eighth, eighteen hundred and ninety-four, or that hereafter may be organized, under the laws of this state, except as otherwise expressly provided in this title, shall not be liable for the corporate obligations, nor shall assessments be levied on such stock for any purpose whatever, except to such extent and in such manner as may be expressly provided in the articles of incorporation."

Section 338. provides:

"The articles of incorporation of any corporation now existing, or that may hereafter be organized under the laws of this state, may be amended in any respect conformable to the provisions of this chapter by a vote representing at least two-thirds of the outstanding capital stock thereof at a stockholders' meeting called for that purpose, as hereinafter prescribed; provided, that the original purpose of the corporation shall not be altered, nor shall the capital stock be diminished to an amount less than fifty per cent in excess of the indebtedness of the corporation; and provided further, that the liability of the holder of full-paid capital stock for assessments or for the indebtedness of the corporation shall not be changed without the consent of all the stockholders."

Section 354 provides:

"The full-paid capital stock of any corporation organized since March eighth, eighteen hundred and ninety-four, or that may hereafter be organized under the laws of this state, shall not be assessable for any purpose whatever, except to such extent and in such manner as may be expressly provided in the articles of incorporation; provided, that if such stock is made assessable and the manner of levying the assessment is not provided for, it shall be levied in the manner and form hereinafter prescribed."

The defendant company was organized December 2, 1902. So far as material, the articles of incorporation provided: That the capital stock should be $250,000, divided into twenty-five hundred shares, of the par value of $100 per share and stated the names of the incorporators and the amount of stock subscribed by each, aggregating two thousand shares, of which the plaintiff and his assignors subscribed 222½ shares. They further provided that: "The remainder of said shares of said capital stock, to wit: five hundred shares thereof, shall be and remain in the treasury

of said corporation, unissued, and shall be disposed of at such time and for such price as the board of directors of said corporation may determine, for the purpose of carrying on the business of said corporation, or in the payment of debts, obligations or the purchase of property necessary or proper for the uses and purposes of said corporation, provided, however, the stockholders of record of said corporation shall have the first right to purchase said stock pro rata." Article 16 provides: "That the board of directors of said corporation shall have the power and authority, for the purposes of paying expenses, conducting the business, or paying the debts of said corporation, to levy and collect assessments upon the outstanding capital stock of said corporation in the manner and form and to the extent as is provided by law. For that purpose and to that end the capital stock of this corporation is hereby declared assessable." Article 19 provides: "That these articles of incorporation may be amended in any respect at any stockholders' meeting called for that purpose, specifying in the notice of such stockholders' meeting the nature of the amendments; a majority of the outstanding capital stock of said corporation represented at such meeting either personally or by proxy voting for such amendments."

In 1903 (Sess. Laws, p. 78, c. 94) the Legislature, among other sections, amended section 338, Rev. St. 1898, to read:

"The articles of incorporation of any corporation now existing or that may hereafter be organized under the laws of this state may be amended in any respect conformable to the laws of this state by a vote representing at least two-thirds of the outstanding capital stock thereof at a stockholders' meeting called for that purpose as hereinafter prescribed. Provided, that the original purpose of the corporation shall not be altered, nor shall the capital stock be diminished to an amount less than fifty per cent in excess of the indebtedness of the corporation; and provided further, that the personal or individual liability of the holder of full-paid capital stock for assessments or for the indebtedness or obligations of the corporation shall not be changed without the consent of all the stockholders."

Section 1, art. 12, of the Constitution of Utah, is:

"Corporations may be formed under general laws, but shall not be created by special acts. All laws relating to corporations may be altered, amended or repealed by the Legislature, and all corporations doing business in this state, may, as to such business, be regulated, limited or restrained by law."

On the 15th day of February, 1904, in pursuance of previous notice of a special meeting for that purpose, the stockholders of the defendant company representing 1,655 shares of the capital stock amended article 16 of the articles of incorporation to read: "That, whenever the said corporation is indebted to an amount exceeding ten per cent. of the amount of the outstanding capital stock of said corporation, the board of directors shall have the power and authority, for the purpose of paying said indebtedness, to levy and collect an assessment upon the outstanding capital stock of said corporation in an amount sufficient to pay said indebtedness, but not to exceed fifty per cent. of the outstanding capital stock, and shall have the power and authority to levy and collect such other assessments upon the capital stock of said corporation as are authorized by statute; but only one assessment exceeding the amount authorized by statute shall be levied by the directors of said corporation. To the extent herein mentioned the capital stock of this corporation is hereby declared to be assessable." The amendment was adopted by 1,605 shares of the capital stock voting for it. Fifty shares voted against it. On March 8, 1904, the directors adopted the following resolution. "Resolved, that an assessment of 50 per cent., to wit, $50 per share, be, and the same is hereby, levied upon all of the outstanding capital stock of the said Keith-O'Brien company, which shall be payable to E. G. Kidder, secretary of said company, at Room 100, David Keith Building, Salt Lake City, Utah, on or before the 2d day of May, 1904; and any shares of stock upon which said assessment shall not be paid on or before the 2d day of May, 1904, shall be delinquent, and shall be sold according to law on the 6th day of June, 1904, to pay the amount of said assessment and the costs of advertising and expenses of sale." Notices of the amending of the ar-

32 Utah—26

ticles and of the levying of the assessment were properly given. The plaintiff and his assignors failed to pay the assessment, whereupon their stock was sold.

The appellant contends: (1) That the original articles of incorporation did not authorize the board to levy an assessment upon the outstanding capital stock fully paid, nor were any number of stockholders less than the whole authorized to amend the articles with respect to levying and collecting assessments on such stock; (2) that the Legislature, under the reserved power of the Constitution, could not lawfully confer authority upon two-thirds of the stockholders, or any other number of stockholders less than the whole, to make amendments to the articles, so as to levy assessments on such capital stock, without the consent of the minority; and (3) that in all events such assessments could not lawfully be made until the treasury stock was first exhausted.

It undoubtedly is the law that the power of a corporation to levy an assessment on full-paid capital stock must be derived from the statute, or the articles. of incorporation, or some other express promise to pay it. It may be assumed that, were it not for the provisions contained in articles 16 and 19 of the articles of incorporation, the original articles could not have been amended, under section 338, Rev. St. 1898, so as to authorize the levy of an assessment on full-paid capital stock without the consent of all the stockholders. But section 331, Rev. St., provides that assessments are not to be levied on full-paid stock for any purpose whatever, except to such extent and in such manner as may be expressly provided in the articles of incorporation. And it is the general rule that

"A majority of the stockholders of a corporation clearly have the power to make any alterations or changes in the constitution of the corporation which are authorized by its charter, for this power is within the contract between the corporation and its stockholders." (3 Clark & Marshall's Private Corporations, sec. 630.)

"It is a principle of law," says Mr. Cook, in his work on Corporations (volume 1 [5th Ed.], sec. 241), "coeval with the existence of corporations having capital stock, that, unless the corporation char-

ter or constitutional statute provides otherwise, a stockholder, the full par value of whose stock has been paid in, is not liable for and cannot be made to pay any amounts in addition thereto."

The plaintiff and his assignors subscribed the articles of incorporation. The articles are their contract. What powers have they conferred upon the board of directors, or a majority of the stockholders, by the terms of their contract? Fairly construed, article 16 of their contract means that, for the purpose of paying expenses, conducting the business, and for paying the debts of the corporation, the board of directors are authorized to levy and collect assessments on the outstanding capital stock, and for that purpose and to that end such stock was made assessable. The extent of the assessment, and the manner and form of levying and collecting it, was stipulated to be as by law provided. Such stipulation undoubtedly was made with reference to the proviso of section 354, Rev. St. 1898, that if such stock (full-paid capital stock) is made assessable, and the manner of levying the assessment is not provided for (by the articles), "it shall be levied in the manner and form hereinafter provided." It will therefore be observed that the capital stock of the corporation was, for certain purposes and to some extent, made assessable. Such was the contract of agreement of the incorporators, and to which each subscriber agreed. Now, they further contracted and agreed among themselves that the articles might be amended in any respect, at any stockholders' meeting called for that purpose, by a majority of the outstanding capital stock voting for such amendments. By this stipulation the incorporators expressly authorized a majority of the stockholders to amend the articles. They had the undoubted right to make such an agreement. While this did not give the majority the right to alter or change the fundamental purpose or character of the corporation, or to substitute entirely different articles for the original, it nevertheless gave them the authority to make any reasonable and proper amendments germane to the things and subjects expressed in the articles, or in furtherance of carrying out the general plan and purpose of the corporation, and to promote

the due administration of its affairs. As before observed, it may be conceded that, had the incorporators in their original articles declared that the full-paid capital stock should not be assessable for any purpose, the articles, by reason of section 338, Rev. St., could not thereafter have been amended, so as to make such stock assessable, without the consent of all the stockholders. Nevertheless, when the incorporators, by their articles of agreement, declared such stock assessable to some extent and for certain purposes, and then expressly conferred upon a majority of the stockholders the authority to amend the articles in any respect, they by their agreement consented to any reasonable and proper amendment which a majority may thereafter make with respect to levying an assessment on such stock. The amendment, made by more than two-thirds of the outstanding capital stock, was germane to the subject specified and expressed in article 16 of the original articles; and by virtue of the power conferred by the articles we are of the opinion, and so hold, that the majority of the outstanding capital stock had the right to make such amendment to the articles as was here made.

Having reached this conclusion, it is unnecessary to pass upon the questions whether the Legislature, by the amendment of 1903, conferred the power upon two-thirds of the stockholders to amend the articles so as to authorize the board of directors to levy the assessment in question against a dissenting minority, and whether the Legislature, under the reserved power of the Constitution, was authorized to make such an amendment, so far as affecting corporations existing at the time of the passage of the amendment.

The only other question remaining is: Was the assessment properly levied while the five hundred shares of treasury stock remained in the treasury and unsold? Again looking at the contract of the incorporators, we find that these five hundred shares should remain in the treasury, and should be disposed of at such time and for such price as the board of directors should determine. The articles nowhere provide that the treasury stock should first be exhausted before the levying of an assessment. On the contrary, the articles

of incorporation expressly left the disposition of the treasury stock to the discretion of the board of directors. Furthermore, it is made to appear that nothing substantial could have been realized on a sale of the treasury stock at the time of the levying of the assessment. The corporation then owed an indebtedness of over $153,000. The excess of assets, as stated by some of the witnesses, was about $141,000, but estimated on invoices at cost price of goods and fixtures. Some of the witnesses valued the capital stock at $20 to $70 per share. However, there is ample testimony in the record showing that at the time of the levying of the assessment, owing to the weak and unfavorable financial condition of the corporation, its capital stock had no real market value, and that the treasury stock could not have been sold for any substantial price, and that if it had been sold nothing substantial would have been realized for it. ·  Some of the witnesses even say that it "was impossible" to sell it; that the only possible way to continue the business of the corporation was to borrow money by the issuance of bonds or preferred stock, or to levy an assessment. By reason of the power conferred upon the board of directors to dispose of the treasury stock at their discretion, and by reason of the showing to warrant a finding that nothing substantial could have been realized on a sale of the treasury stock, it was not improper to levy an assessment before first exhausting the treasury stock. (*Gary v. Mining Co.,* 9 Utah 464, 35 Pac. 494.)

We are of the opinion that the judgment of the court below should be affirmed; and it therefore is affirmed, with costs.

McCARTY, C. J., and FRICK, J., concur.